UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARGARET OROSZ,

                Plaintiff,

- *against* -

REGENERON PHARMACEUTICALS, INC.,

                Defendant.

15CV8504 (NSR)(LMS)

**REPORT AND RECOMMENDATION**

**TO: THE HONORABLE NELSON S. ROMÁN, U.S.D.J.**

On May 20, 2016, Plaintiff Margaret Orosz ("Orosz") filed a Second Amended Complaint, asserting four claims: (1) violation of the Fair Labor Standards Act ("FLSA") for failure to pay Orosz overtime compensation (Count I); (2) violation of the New York Labor Law ("NYLL") for failure to pay Orosz wages earned (Count II); (3) violation of Title VII for pregnancy discrimination based on wrongful termination (Count III); and (4) violation of Title VII for pregnancy discrimination based on failure to hire (Count IV). Docket # 18. Presently before the Court is a motion by Defendant Regeneron Pharmaceuticals, Inc. ("Regeneron") to dismiss Count IV of the Second Amended Complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. Docket # 21. For the reasons that follow, I conclude, and respectfully recommend that Your Honor should conclude, that Regeneron's motion to dismiss should be denied.

## BACKGROUND

On June 5, 2013, Regeneron hired Orosz as a consultant architect in its Facilities Space Planning Department through Microsol Resources Corp. ("Microsol"), a staffing company and Orosz's co-employer. Second Am. Compl. ¶¶ 12-15. Orosz worked at Regeneron from June, 2013, until August, 2014. Id. ¶¶ 14, 53. In August, 2013, Orosz told her manager, Patricia Hamilton, that she was undergoing in-vitro fertilization treatments in order to become pregnant. Id. ¶ 37. In response, Hamilton told Orosz, "If anyone asks you if you plan to have children, tell them your time has passed and that you are not having children." Id. ¶ 38. Beginning in September, 2013, Orosz's co-workers began making comments regarding her efforts to become pregnant. Id. ¶ 40. For example, a coworker declared "anyone who sits next to me becomes pregnant" while Orosz was in the same room. Id. ¶ 41.

In November, 2013, Hamilton informed Orosz that she would be hired as a permanent Regeneron employee. Id. ¶ 42. Throughout the rest of Orosz's employment with Regeneron, Hamilton engaged in an ongoing discussion with Orosz about her transition to becoming a permanent employee. Id. ¶ 43. In January, 2014, Hamilton told Orosz to tell Regeneron's management that she was "too old for babies." Id. ¶ 44. In the same month, Hamilton met with Orosz to discuss her transition to a permanent position and instructed Orosz to draft a job description for her permanent position. Id. ¶ 45. In April, 2014, Hamilton asked Regeneron's Procurement Manager Keith Turvey about the cost of buying out Orosz's contract with Microsol, and he told her that it would cost approximately $16,000, which he said was a " 'good price for getting [Plaintiff] on board.' " Id. ¶¶ 46-47.

In May, 2014, Regeneron's Facilities Vice President, Joanne Deyo, asked Orosz if she had children and whether she was planning to start a family. Id. ¶ 48. Orosz did not provide an

answer. Id. In June, or July, 2014, Regeneron's Manager, Anisa Williams, asked Orosz if she was pregnant, which Orosz denied. Id. ¶ 49. On July 28, 2014, Orosz emailed Daria Palestina, Regeneron's Director of Human Resources, to report that a co-worker was harassing her. Id. ¶ 50. In that email, Orosz informed Palestina that she was four months pregnant. Id. ¶ 51. On July 31, 2014, in a meeting with Orosz, Michelle Fritsche, Regeneron's Director of Facilities, informed Orosz that Regeneron decided not to hire her to the permanent position, and that Regeneron was terminating Orosz's employment effective at the end of August, 2014. Id. ¶¶ 52-53. Regeneron asserted that it changed its mind and decided not to hire Orosz due to lack of work and Orosz's lack of experience with Building Information Modeling ("BIM"). Id. ¶ 54. Regeneron thereafter continued to seek applicants for the position to which it had intended to hire Orosz. Id. ¶ 58.

In her claim for Title VII pregnancy discrimination based on failure to hire, Orosz alleges that Regeneron failed to hire her to a permanent position because she was pregnant. Id. ¶¶ 87-90. Orosz alleges that the reasons Regeneron provided for its failure to hire her were pretextual because BIM experience had never been included as a qualification for the permanent position which had been offered to Orosz. Id. ¶¶ 54-56.

## DISCUSSION

### I. Standard of Review

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). The complaint must include something more than "an unadorned, the-defendant-unlawfully harmed-me accusation." Id.

3

When considering a defendant's Rule 12(b)(6) motion to dismiss, "a judge must accept as true all of the factual allegations contained in the complaint," Erickson v. Pardus, 551 U.S. 89, 94 (2004) (citations omitted), and must draw all reasonable inferences from those allegations in the plaintiff's favor. Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002). However, a court is not required to accept as true legal conclusions, and "[t]hreadbare recitals of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 129 S. Ct. at 1949.

Previously, a Rule 12(b)(6) motion to dismiss would not be granted unless "it appeared beyond doubt that the plaintiff [could] prove no set of facts in support of his [or her] claim which would entitle him [or her] to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). However, the Supreme Court has explained that "Conley's 'no set of facts' language has been questioned, criticized, and explained away long enough," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 562 (2007), since a literal reading of it would enable a conclusory statement of claim to survive a motion to dismiss "whenever the pleadings left open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery." Id. at 561. Instead, to survive a motion to dismiss, a complaint must set forth sufficient facts to "state a claim to relief that is plausible on its face." Iqbal, 129 S. Ct. at 1949 (internal quotation marks and citation omitted). A claim is facially plausible when the complaint contains enough facts to allow the court to reasonably infer that the defendant is liable for the alleged misconduct. Id. Put another way, a plaintiff must set forth enough facts to "nudge [his or her] claims across the line from conceivable to plausible." Twombly, 550 U.S. at 570.

Additionally, in the context of employment discrimination claims, one recent district court case summed up the applicable pleading standard as follows:

4

> Analyzing whether a plaintiff has sufficiently alleged an employment discrimination claim requires reference . . . also to the three-stage, burden-shifting framework established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Littlejohn v. City of New York, 795 F.3d 297, 307-08 (2d Cir. 2015) (citing Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133 (2000)) (discussing burden-shifting); St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993) (citing Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253-55 (1981)). Under that framework, a plaintiff must first establish a prima facie case of discrimination. St. Mary's Honor Ctr., 509 U.S. at 506; see also Dowrich-Weeks v. Cooper Square Realty, Inc., 535 Fed. Appx. 9, 11 (2d Cir. 2013); Ruiz v. Cty. of Rockland, 609 F.3d 486, 491 (2d Cir. 2010). A plaintiff's burden at this stage is "minimal." Holcomb v. Iona Coll., 521 F.3d 130, 139 (2d Cir. 2008) (quoting St. Mary's Honor Ctr., 509 U.S. at 506). If a plaintiff meets her [or his] burden at this stage, a "temporary presumption" of discrimination arises, and the burden shifts to the defendant-employer to articulate a legitimate, nondiscriminatory reason for the challenged conduct. Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 84 (2d Cir. 2015) (quoting Littlejohn, 795 F.3d at 307, 311). If the defendant-employer articulates such a reason, the burden shifts back to the plaintiff-employee to show that the defendant-employer's reason was merely pretext. Id. at 83.
>
> At the pleading stage, however, a plaintiff does not need to prove discrimination, or even allege facts establishing every element of the McDonnell Douglas prima facie case, but the facts alleged must give "plausible support to the reduced requirements" of the prima facie case. Littlejohn, 795 F.3d at 311; see Dawson v. N.Y.C. Transit Auth., 624 Fed. Appx. 763, 767 (2d Cir. 2015); Vega, 801 F.3d at 84; Williams v. N.Y.C. Hous. Auth., 458 F.3d 67, 71 (2d Cir. 2006) ("[T]he requirements for establishing a prima facie case under McDonnell Douglas [do not] apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss." (second alteration in original) (quoting Swierkiewicz v. Sorema, 534 U.S. 506, 511 (2002))). Thus, a plaintiff need only plead facts sufficient to give "plausible support" to plaintiff's "minimal" initial burden, which is governed by the statute under which she [or he] brings her [or his] claims. Vega, 801 F.3d at 84 (quoting Littlejohn, 795 F.3d at 307, 312).

Szewczyk v. City of New York, 15-CV-918 (MKB), 2016 WL 3920216, at *3 (E.D.N.Y. July 14, 2016).

5

## II.  Consideration of Extrinsic Documents

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable, LLC, 622 F.3d 104, 111 (2d Cir. 2010) (citations omitted). "[G]enerally, the harm to the plaintiff when a court considers material extraneous to a complaint is the lack of notice that the material may be considered." Chambers, 282 F.3d at 153 (citing Cortec Indus., Inc. v. Sum Holding LP, 949 F.2d 42, 48 (1991)). "Accordingly, where plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56[1] is largely dissipated." Id. (internal quotation marks, alteration, and citation omitted). "[A] plaintiff's reliance on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough." Id. (emphasis in original).

"Limited quotation from or reference to documents that may constitute relevant evidence in a case is not enough to incorporate those documents, wholesale, into the complaint." Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004). "A mere passing reference or even references, however, to a document outside of the complaint does not, on its own, incorporate the document into the complaint itself." Williams v. Time Warner, Inc., 440 F. App'x 7, 9 (2d Cir. 2011) (citations omitted). "Where a document is not incorporated by reference, the court may neverless [sic] consider it where the complaint relies heavily upon its terms and effect, thereby rendering the

---

[1] Where a court is presented with extrinsic documents on a Rule 12(b)(6) motion and elects not to exclude them, it must "convert the motion to one for summary judgment and give the parties an opportunity to conduct appropriate discovery and submit the additional supporting material contemplated by Rule 56." Chambers, 282 F.3d at 154 (citations omitted).

document integral to the complaint." DiFolco, 622 F.3d at 111 (internal quotation marks and citations omitted). However, "[a] document is not 'integral' simply because its contents are highly relevant to a plaintiff's allegations, but only when it is clear that the plaintiff relied on the document in preparing his [or her] complaint." Tubbs v. Stony Brook Univ., 15 Civ. 0517 (NSR), 2016 U.S. Dist. LEXIS 28465, at *13 (S.D.N.Y. Mar. 4, 2016) (internal quotation marks and citation omitted).

The parties dispute whether the Court may consider any of the additional documents submitted by Regeneron in support of its motion to dismiss. These consist of a copy of the job description drafted by Orosz and copies of email strings between Orosz and her manager, Patricia Hamilton, and Orosz and Director of Human Resources, Daria Palestina. Farella Decl. (Docket # 22) Exs. B-E. In response, in the event that the Court decides to consider these additional documents, Orosz has submitted other documents for the Court to consider as well, consisting of the job description for the position created by Regeneron and a document created by Orosz's counsel which tracks the differences between the job description created by Orosz and the job description for the position created by Regeneron. Miller Decl. (Docket # 24-1) Exs. A-B.

In this case, none of the documents submitted by Regeneron is either attached to the Second Amended Complaint or incorporated in it by reference. Although Regeneron argues for consideration of these documents based on the fact that Orosz has "notice" of these documents and that the documents were used by Orosz in "framing the complaint," Reply Brief (Docket # 25) at 5, this misconstrues the case law, which requires a plaintiff's reliance upon the documents in framing the complaint. See Chambers, 282 F.3d at 153 ("[A] plaintiff's reliance on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's

consideration of the document on a dismissal motion; mere notice or possession is not enough.") (emphasis in original). Despite the fact that Orosz alleges that Hamilton instructed her to "draft a job description for her permanent position," Second Am. Compl. ¶ 45, Orosz does not "[rely] heavily upon [the] terms and effect" of the job description document "thereby rendering the document 'integral' to the complaint." DiFolco, 622 F.3d at 111 (internal quotation marks and citations omitted); see also Williams, 440 F. App'x at 9 ("A mere passing reference or even references . . . to a document outside of the complaint does not, on its own, incorporate the document into the complaint itself.") (citations omitted).

Similarly, there is no reference in the Second Amended Complaint to the emails submitted to the Court by Regeneron and thus, even if Orosz was aware of these emails, she did not rely upon them in drafting her failure to hire claim. Regeneron argues that the emails, "while potentially **disproving** the allegations, depict the 'ongoing discussions' but **are evidence** that no such position existed," Reply Brief (Docket # 25) at 3 (emphases added)[2]; however, whether or not Orosz will be able to prove the elements of her failure to hire claim upon a fully-developed record is not the measure of whether Orosz is able to state a claim that can survive a Rule 12(b)(6) motion to dismiss. Rather, "[i]n ruling on a motion pursuant to Fed. R. Civ. P. 12(b)(6), the duty of a court is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." DiFolco, 622 F.3d at 113

---

[2] Regeneron's moving brief is full of arguments based on the email correspondence submitted in support of its motion. See, e.g., Mem. of Law in Supp. (Docket # 23) at 6 ("Plaintiff's correspondence with Hamilton (and lack of pleading otherwise) is a concession that such a position was never created."); 8 ("Although her self-serving correspondence with Hamilton makes it appear as if only small details remained before she became a full-time employee, Plaintiff understood and concedes in her contemporaneous writings that Hamilton had to receive approval from Fritsche before proceeding."), 9 ("Plaintiff's own correspondence, beginning in early June, is replete with complaints that the full-time hiring process was not moving forward.").

8

(internal quotation marks and citation omitted); see Tubbs, 2016 U.S. Dist. LEXIS 28465, at *16 ("In essence, the . . . Defendants ask the Court to weigh evidence that tends to disprove (or expand upon) Plaintiff's allegations. The Court will not entertain such an exercise, which is clearly improper on a motion to dismiss.").

Accordingly, the Court considers solely the allegations in the Second Amended Complaint in deciding whether Orosz has succeeded in stating a claim for failure to hire.

### III. Claim for Failure to Hire

In order to state a claim for failure to hire under Title VII, a plaintiff must allege that: "1) she [or he] is a member of a protected class; 2) she [or he] applied and was qualified for a job for which the employer was seeking applicants; 3) she [or he] was rejected for the position; and 4) the position remained open and the employer continued to seek applicants having the plaintiff's qualifications." Brown v. Coach Stores, 163 F.3d 706, 709 (2d Cir. 1998) (internal quotation marks omitted) (quoting McDonnell Douglas Corp. v. Greene, 411 U.S. 792, 802 (1973)). "[I]n establishing a prima facie case the plaintiff must show that 'she [or he] applied for an available position for which she [or he] was qualified, but was rejected under circumstances which give rise to an inference of unlawful discrimination.' " Id. at 710 (quoting Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)); see also, e.g., Szewczyk, 2016 WL 3920216, at *4 ("In the context of a claim for failure to hire, a plaintiff complaining of a discriminatory failure to hire must first make out a prima facie case of discrimination by showing that (1) he [or she] is a member of a protected class, (2) he [or she] was qualified for the job for which he [or she] applied, (3) he [or she] was denied the job, and (4) the denial occurred under circumstances that give rise to an inference of invidious discrimination.") (internal quotation marks and citations omitted).

9

In its motion papers, Regeneron argues that the position Orosz alleges she applied for never existed. As a result, Orosz could not have been rejected, nor could Regeneron have sought other applicants, for the position. Therefore, according to Regeneron, Orosz is unable to fulfill three of the four elements of a claim for failure to hire,[3] and the claim ought to be dismissed. Mem. of Law in Supp. at 6-9. Although generally a plaintiff must "allege that she or he applied for a specific position or positions and was rejected therefrom," this rule "is subject to modification where the facts of a particular case make an allegation of a specific application a quixotic requirement." Brown, 163 F.3d at 710; see also Petrosino v. Bell Atlantic, 385 F.3d 210, 227 (2d Cir. 2004) (A plaintiff may be excused from the specific application requirement if he or she can show "that (1) the vacancy at issue was not posted, and (2) the employee either had (a) no knowledge of the vacancy before it was filled or (b) attempted to apply for it through informal procedures endorsed by the employer.").

In this case, Orosz alleges that "[i]n or around November 2013," Hamilton told her she **"would be hired on** as a permanent employee," Second Am. Compl. ¶ 42 (emphasis added), and that "[t]hroughout the rest of [Orosz's] employment," she and Hamilton "engaged in an ongoing discussion" about Orosz's "transition to becoming a permanent employee," id. ¶ 43. In addition, "[i]n or around January 2014, Manager Hamilton met with [Orosz] to discuss her transition to a permanent position with [Regeneron] and instructed [Orosz] to draft a job description for her permanent position." Id. ¶ 45. Accepting these allegations as true and drawing all reasonable inferences therefrom in Orosz's favor, as the Court must do on a motion to dismiss, the allegation of a specific application would be a "quixotic requirement" in this case since Orosz's claim is not that she had to apply for a specific position, but rather that Regeneron knew it wanted to hire her

---

[3] Regeneron concedes that Orosz satisfies the first element of a failure to hire claim, i.e., she is a member of a protected class. Mem. of Law in Supp. at 6.

10

to a permanent position for which she was qualified and wanted her to draft her own job description. These allegations also satisfy the exception to the specific application requirement set forth in Petrosino in that Orosz alleges that she was offered a position that was not posted and for which she applied through informal procedures endorsed by Regeneron, acting through Hamilton, Orosz's manager. Furthermore, Orosz alleges that Regeneron subsequently refused to hire her to the permanent position, and instead terminated her employment after finding out that she was pregnant, using Orosz's lack of BIM experience as a pretext, and that thereafter Regeneron continued to seek applicants for the permanent position. Id. ¶¶ 52-58.[4]

Regeneron's arguments in favor of dismissal of Orosz's failure to hire claim are all based on the documentary evidence that both it and Orosz have submitted, but which the Court has determined is beyond its consideration in deciding this motion. As noted above, whether or not Orosz will be able to prove the elements of her failure to hire claim upon a fully-developed record is an issue to be resolved at a later stage in the litigation. These allegations, however, are

---

[4] Regeneron focuses its arguments on its assertion that no position existed to which Orosz could have applied or from which she could have been rejected, and it does not address the issue of whether Orosz sufficiently alleges that she was denied a permanent position under circumstances giving rise to an inference of unlawful discrimination. "An inference of discrimination can arise from circumstances including, but not limited to . . . the sequence of events leading to the plaintiff's discharge." Szewczyk, 2016 WL 3920216, at *5 (internal quotation marks and citations omitted). In reviewing the Second Amended Complaint, the Court finds that it includes allegations supporting an inference of pregnancy discrimination. See, e.g., Second Am. Compl. ¶ 38 (in August, 2013, Hamilton "instructed Plaintiff, 'if anyone asks you if you plan to have children, tell them your time has passed and that you are not having children' "), ¶ 44 ("In or around January 2014, Manager Hamilton told Plaintiff to tell Defendant's management that she was not planning on starting a family, saying 'tell them you are too old for babies.' "), ¶¶ 50-52 ("On July 28, 2014, Plaintiff complained via e-mail to Defendant's Director of Human Resources, Daria Palestina . . . and Microsol's Human Resources department about Co-worker Jeannette Welday's harassment of her. . . . In her e-mail, Plaintiff informed Defendant that she was four (4) months pregnant and had recently developed respiratory issues related to her pregnancy. . . . On or about July 31, 2014, Defendant's Director of Facilities, Michelle Fritsche . . . met with Plaintiff and informed her that Defendant had changed its mind and decided not to hire her to the permanent position.").

sufficient to give "plausible support" to Orosz's "minimal" initial burden to state a Title VII claim for failure to hire. See Szewczyk, 2016 WL 3920216, at *3 (citations omitted).

## CONCLUSION

For the foregoing reasons, I conclude, and respectfully recommend that Your Honor should conclude, that Regeneron's motion to dismiss Count IV of the Second Amended Complaint for failure to state a claim (Docket # 21) should be denied.

## NOTICE

Pursuant to 28 U.S.C. § 636(b)(1), as amended, and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days, plus an additional three (3) days, pursuant to Fed. R. Civ. P. 6(d), or a total of seventeen (17) days, see Fed. R. Civ. P. 6(a), from the date hereof, to file written objections to this Report and Recommendation. Such objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Nelson S. Román, at the United States District Court, Southern District of New York, 300 Quarropas Street, White Plains, New York, 10601, and to the chambers of the undersigned at the same address.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered.

Requests for extensions of time to file objections must be made to Judge Román.

Dated: August 30, 2016
White Plains, New York

Respectfully submitted,

_____
Lisa Margaret Smith
United States Magistrate Judge
Southern District of New York

12